UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **WILLIE LAWSON, JR.,** | } |
| Plaintiff, | } |
| v. | } Case No.: 7:12-cv-02072-RDP |
| **S T BUNN CONSTRUCTION, CO., INC.,** | } |
| Defendant. | } |

## MEMORANDUM OPINION

This is a race discrimination and retaliation lawsuit brought by Willie Lawson, Jr. against his former employer, S T Bunn Construction Co., Inc. Plaintiff asserts that he was discriminated against because of his race, African American, in terms of both his pay and termination, and that he was retaliated against for filing an EEOC charge complaining of race discrimination the day after he was terminated. (Doc. # 1). Defendant denies that it discriminated or retaliated against Plaintiff and asserts that it had legitimate, non-discriminatory reasons for all decisions regarding Plaintiff's employment. (Doc. # 17).

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 16), which has been fully briefed (Docs. # 17, 22, and 31). Also before the court is Defendant's Motion to Strike Affidavits Filed In Support of Plaintiff's Response to Defendants' Motion for Summary Judgment and Portions of Plaintiff's Response. (Doc. # 32). After careful review, the court concludes that Defendant's Motion for Summary Judgment is due to be granted; its Motion to Strike is due to be denied.

I.     FACTS[1]

Defendant is involved in the heavy road work and asphalt paving industry. (Doc. # 18-1 at pp. 8-9).  Defendant typically assigns employees to work either on one of its road crews, or in its asphalt plant and affiliated materials operations.  (Doc. # 18-1 at p. 25). Guy Watkins, Defendant's Superintendent of Operations, had overall responsibility for Defendant's operations. (Doc. # 18-1 at p. 8; Doc. # 18-5 at ¶ 2).

Plaintiff was hired by Defendant on April 3, 2006.  (Doc. # 18-4 at p. 35; Doc. # 18-5 at ¶ 3). Because of his previous experience, he was hired at an hourly rate of pay of $15.00.  (Doc. # 18-5 at p. 2).  Initially, he was classified as a motor grade operator and was assigned to work on a road crew.  (Doc. # 18-4 at p. 37).  However, when it was determined that Plaintiff would take breaks and lunch at specific times regardless of work flow (Doc. # 18-5 at ¶ 5), and once the road work job to which he was initially assigned ended, Plaintiff was assigned to Defendant's asphalt plant operating a track hoe.  (Doc. # 18-1 at pp. 26-28; Doc. # 18-4 at p. 40).  Despite his reassignment, Plaintiff continued to take breaks and lunch regardless of the production needs at the plant. (Doc. # 18-5 at ¶ 7; Doc. # 18-1 at pp. 72-73).

---

[1] Pursuant to Appendix II to the Court's Scheduling Order titled "Summary Judgment Requirements" (Doc. # 10 at pp. 6-8), the movant is required to present the allegedly undisputed facts of the case in separately numbered paragraphs with supporting record citations.  As to the non-movant's response, Appendix II requires as follows:

> The first section must consist of only the non-moving party's disputes, if any, with the moving party's claimed undisputed facts. The non-moving party's response to the moving party's claimed undisputed facts shall be in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts. Any statements of fact that are disputed by the non-moving party must be followed by a specific reference to those portions of the evidentiary record upon which the dispute is based. *All material facts set forth in the statement required of the moving party will be deemed to be admitted for summary judgment purposes unless controverted by the response of the party opposing summary judgment.*

(Doc. # 10 at p. 8) (emphasis in original).  Plaintiff's response to Defendant's Statement of Undisputed Facts does not set forth any disputes with Defendant's numbered facts pursuant to Appendix II.  (Doc. # 22).

2

For the last several years of Plaintiff's employment, Plaintiff was assigned to operate a track hoe at a leased sandpit in Fosters, Alabama loading sand into dump trucks. (Doc. # 18-1 at pp. 28-30; Doc. # 18-4 at pp. 45). In this position, Plaintiff generally worked alone loading and unloading sand. (*Id.*)  Plaintiff was given a raise to $15.75 per hour, and was the highest paid of Defendant's operators.  (Doc. # 18-4 at pp. 35, 88-89, 125-26; Doc. # 18-5 at ¶¶ 3, 13, 18-19; Doc. # 18-6 at ¶ 23).

Three other white operators whom Plaintiff identifies as comparators were all paid less than Plaintiff.  Randy Beard was paid $13.75 per hour; Steven Beard was paid $13.00 per hour; and Brandon Beard was paid $14.75 per hour. (See Doc. # 18-4 at p. 125-26; Doc. # 18-5 at ¶¶ 18-19).  Plaintiff also identifies Joel Beard, also white, as a comparator; however, Joel Beard is a salaried crew foreman who has been employed with Defendant far longer than Plaintiff, and who supervised a crew of about three to five employees.  (Doc. # 18-5 at ¶ 16).  Plaintiff did not supervise anyone.  (Doc. # 18-4 at pp. 91 and 122).

Defendant's employees were not allowed in the sand pit during hunting season. Therefore, due to the beginning of Alabama's hunting season as well as a general decline in business, there was not a great need for sand during the fall of 2010. (Doc. # 18-1 at p. 43).  As a result, in November 2010, Plaintiff was no longer needed every day.  He was told to call in each week to see if any work was available. (Doc. # 18-4 at pp. 56-57, 60; Doc. # 18-1 at p. 38).

A number of other employees were also sent home for lack of work during this period of time. Brandon Beard, a white operator, was laid off for lack of work during the same period as Plaintiff.  (Doc. # 18-4 at Ex. 5, pp. 106-07; Doc. # 18-6 at ¶ 6).  Steven Beard, another white operator was laid off sporadically between November of 2010 and January of 2011, also due to lack of work. (Doc. # 18-4 at Ex. 6, p. 109; Doc. # 18-6 at ¶ 6).  Two other white operators who

worked on road crews, John Presley and Matthew Smith, were also laid off for certain period of time due to lack of work. (Doc. # 18-4 at Exs. 8-9, pp. 116-18; Doc. # 18-6 at ¶ 7).

Before the events giving rise to this suit, Plaintiff was sent home in June 2010 due to a lack of work. Plaintiff complained to Defendant that other employees should have been sent home (rather than him) on the basis of "seniority." (Doc. # 18-4 at Ex. 4, pp. 65, 69 and 86; Doc. # 18-3 at pp. 9-10). Rock Nichols, Defendant's Treasurer and Chief Financial Officer, and Brad Hubbard, its Safety Director, met with Plaintiff in order to hear and address his complaint. (Doc. # 18-4 at Ex. 4, p. 69; Doc. # 18-3 at pp. 9-10). Hubbard and Nichols summarized their meeting with Plaintiff in a memorandum that same day. In that memo, they documented that they informed Plaintiff that employees were hired to do specific jobs, and that Defendant did not utilize seniority in determining who to send home. (Doc. # 18-4 at Ex. 4, pp. 69, 73; Doc. # 18-3 at pp. 9-10).

At his deposition, Plaintiff testified that he had "heard through the grapevine" that a white supervisor was allowed to count trucks at a jobsite and Plaintiff thought he should have been allowed to do that himself. (Doc. # 18-4 at pp. 102-03). However, that work was actually being performed by pilot car operators who were paid at an hourly rate just over minimum wage, and Plaintiff's supervisor explained that he would not pay an operator $15.75 an hour to do a minimum wage job such as counting trucks. (Doc. # 18-5 at ¶ 13). That is, for economic reasons, Defendant chose to utilize less expensive employees to perform that simple task. (Doc. # 18-4 at Ex. 4, p. 69; Doc. # 18-3 at pp. 9-10; Doc. # 18-5 at ¶ 14).

Plaintiff was laid off from November 2010 until April 2011, although he was allowed to continue driving one of Defendant's trucks. (Doc. # 18-1 at pp. 36, 38-42, 66; Doc. # 18-5 at ¶ 10). He was also assigned a radio for communicating with Defendant. (Doc. # 18-1 at pp. 38-39,

66; Doc. # 18-5 at ¶ 10). Plaintiff's supervisor testified that he and the dispatcher (Jamie Porter) repeatedly tried to call Plaintiff on his work-issued radio throughout this four-month period whenever there was work available. (Doc. # 18-1 at pp. 38-42). However, they testified they were unable to reach him. (Doc. # 18-1 at p. 40-41).

To support his argument that Defendant had a "custom and practice" of allowing employees with more seniority or experience to be among the last to be laid off, Plaintiff presents the affidavit of Dewayne Robinson, another employee of Defendant who worked as a trucker and a track hoe operator. (Doc. # 25-1 at 9-10. However, Robinson's affidavit simply is not instructive on this issue. It states that "S.T. Bunn had a practice of laying off persons with more seniority or skill Willie to be laid off last or have reduced hours." [Sic]. (Doc. # 25-1 at 10).

On April 4, 2011, Plaintiff's employment was terminated due to lack of work. (Doc. # 18-1 at pp. 42, 51-52; Doc. # 18-6 at ¶ 8). Two other employees, Richard Gilliland (white) and Leobardo Torres (Hispanic) were also terminated in April due to lack of work. (Doc. # 18-1 at pp. 51-52, 62; Doc. # 18-6 at ¶ 9). Following Plaintiff's termination, two of Defendant's then current African American employees, Frederick Hutchins and Duane Robinson, performed the work that Plaintiff had been doing. (Doc. # 18-4 at p. 139; Doc. # 18-1 at Ex. 2, p. 59-60).

On April 5, 2011, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission against Defendant alleging that Defendant had discriminated against him because of his race. (Doc. # 25-1 at 32).

On the morning of June 10, 2011, about two months after Plaintiff's termination, Defendant's Superintendent, Guy Watkins, was told by two employees that Plaintiff's brother had told them that Plaintiff was going to cause Watkins bodily harm if he saw him again. (Doc. #

18-1 at pp. 73-76). Watkins took this threat seriously. (Doc. # 18-1 at p. 76). Defendant has a Workplace Violence which prohibits any threats of violence or acts of intimidation against any employee. (See Doc. # 18-4 at Ex. 14, p. 153). In light of the reported threat, Defendant's counsel wrote to Plaintiff to advise him that, pursuant to the Workplace Violence policy, he was not to come onsite at any of Defendant's locations or to follow up on any threats he may have made against Watkins. (See Doc. # 18-4 at p. 141). Defendant has fired two other employees for making threats against employees. (Doc. # 18-4 at pp. 154-155; Doc. # 18-2 at pp. 8-10; Doc. # 18-6 at ¶¶ 13-14).

Brockerick Fulgham, one of the employees reporting the threat, identified the individual who relayed the threat as Plaintiff's brother who works either for the City of Eutaw or for Greene County. (Doc. # 31-2). Plaintiff has a brother named Jessie who lives in Greene County and who works for the City of Eutaw. (Doc. # 18-4 at 14). There is no evidence in the record that Jessie denied relaying the threat. Instead, Plaintiff presented the affidavit of another brother, William, who has lived in Decatur, Alabama for the last ten years. It is William, the other brother, who has denied telling anyone Plaintiff would harm Guy Watkins. (Doc. # 25-1). At around this same time, Plaintiff's employment with his subsequent employer was terminated "because he decided to take a lunch while trucks waited in line." (Doc. # 25-1 at 7).

Plaintiff filed his Complaint initiating this lawsuit on June 5, 2012. (Doc. # 1). His Complaint asserts two counts, one under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the other under 42 U.S.C. § 1981. (Doc. # 1). Plaintiff alleges that Defendant violated his rights under both statutes in the following ways: (a) by paying him less than similarly situated Caucasian employees; (b) by terminating his employment because of his race; and (c) by retaliating against him for filing a charge of discrimination by making false claims

that Plaintiff threatened an employee, filing a false police report and report to the EEOC, and deterring him from other employment. (Doc. # 1).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *See* id. at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* 249.

## III. ANALYSIS

After careful review and for the reasons stated below, the court concludes that there are

no material issues of fact in this case and that Defendant is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56.

As the Eleventh Circuit has explained, "[b]oth § 1981 and Title VII 'are subject to the same standards of proof and employ the same analytical framework.'" *Bryant v. Jones*, 575 F.3d 1281, 1296, n. 20 (11th Cir. 2009); *see also Sims v. Coosa County Bd. of Educ.*, 2008 WL 4080769, at *4 (M.D. Ala. 2008) ("The elements of a § 1981 race discrimination claim in the employment context are the same as a Title VII disparate treatment claim.") (citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989)).  Thus, as the substantive analysis for these claims is the same, it is appropriate to discuss contemporaneously whether Plaintiff has met this standard with respect to both his Title VII and § 1981 claims.

To prevail under Title VII or § 1981, a plaintiff must present evidence that is "sufficient to create an inference of discrimination."  *Holifield v. Reno*, 115 F.3d 1555, 1564 (11th Cir. 1997).  One method to establish that inference is for a plaintiff to demonstrate that: "(1) he was a member of a protected class; (2) he was qualified for the job; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside the protected class more favorably." *Crawford*, 529 F.3d at 970.

Where, as here, a plaintiff relies upon circumstantial evidence of discrimination and retaliation under Title VII and § 1981, courts apply the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008). Under this analysis, once a plaintiff has established a prima facie case of discrimination or retaliation, "the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason'" for the challenged action. *Crawford*, 529 F.3d at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802).  This burden involves no credibility determination, *St.*

*Mary's Honor Center v. Hicks*, 509 U.S. 502, 509, (1993), and has been characterized as "exceedingly light." *Perryman v. Johnson Prod. Co.*, 698 F.2d 1138, 1141 (11th Cir. 1983). So long as the employer articulates "a clear and reasonably specific" non-discriminatory basis for its actions, it has discharged its burden of production. *Texas Dept. of Community Affairs v. Burdine*, 450 248, 254-55 (1981). And once an employer articulates a legitimate, non-discriminatory reason, "the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination." *Id.* (citations omitted).

With these well-settled legal principles in mind, the court addresses Plaintiff's pay, termination, and retaliation claims, in turn.

### A.     Disparate Pay

In order to establish a prima facie case of disparate pay, a plaintiff must show that he occupies a position similar to that of a higher paid employee who is not a member of his protected class. *Crawford,* 529 F.3d at 974-75; *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994). The employees whom the plaintiff identifies as comparators must be similarly situated in all relevant respects. *Wilson v. B/E Aerospace, Inc.,* 376 F.3d 1079, 1091 (11th Cir. 2004); *Holifield*, 115 F.3d at 1562. The Eleventh Circuit has held this to mean that "[t]he comparator must be nearly identical to the plaintiff." *Wilson*, 376 F.3d at 1091; *Mannicia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999).

Plaintiff has failed to establish a prima facie case of disparate pay because either (1) the asserted comparators were actually paid less than him (meaning he was not treated less favorably than any purported comparator), or (2) in the case of the supervisor identified by Plaintiff, he is not similarly situated to Plaintiff in all relevant respects (meaning the supervisor is not a proper comparator).

The three white operators identified by Plaintiff as comparators (Randy, Steven and Brandon Beard) were all paid less than Plaintiff. Plaintiff made $15.75 per hour and was the highest paid of Defendant's operators. (Doc. # 18-4 at p. 35, 88-89, 125-26; Doc. # 18-5 at ¶¶ 3, 13, 18-19; Doc. # 18-6 at ¶ 23). He was paid at a higher rate than the three Beards who were hourly workers: Randy Beard was paid $13.75 per hour; Steven Beard was paid $13.00 per hour; and Brandon Beard was paid $14.75 per hour. (Doc. # 18-4 at p. 125-26; Doc. # 18-5 at ¶¶ 18-19). Joel Beard, a crew foreman who supervised 3-5 people and who had been employed with Defendant far longer than Plaintiff, is simply not an appropriate comparator under applicable law. In addition to his shorter stint of service as compared to Joel Beard, Plaintiff supervised no one. Therefore, Plaintiff has failed to establish a prima facie case on his disparate pay claim.

### B.      Plaintiff's Layoff and Termination

Plaintiff's layoff and termination claim also fails for a number of reasons which are discussed below.

#### 1.      Plaintiff Failed to Establish a Prima Facie Case

As to his claim that his layoff and eventual termination were discriminatory, Plaintiff again has failed to establish a prima facie case. Plaintiff has neither shown that a similarly situated employee outside of his protected class was treated more favorably, nor that he was replaced by someone outside of his protected class. *See Morris v. Emory Clinic, Inc.*, 402 F.3d 1076, 1082 (11th Cir. 2005) (doctor discharged from clinic due to patient complaints about his conduct who could not show that he was replaced by someone outside his protected class or that a comparable person outside of his protected class received "nearly identical" complaints, but was not fired, failed to establish a prima facie case).

10

Plaintiff was laid off in November 2010 due to hunting season and a lack of a need for sand. Plaintiff's employment was eventually terminated in April 2011 due to lack of work. (Doc. # 18-1 at pp. 42, 51-52; Doc. # 18-6 at ¶ 8).

Plaintiff testified that he believed it was unfair that other people with less seniority were able to continue to work, but -- importantly -- he does not dispute that there was a lack of work in the area in which he was employed. Rather, he merely asserts that he should have been the one to continue performing the work because, based on his experience and seniority, he should have bumped others. However, as Defendant explained to Plaintiff in June 2010, well before the challenged termination decision, seniority did not give him (or any other employee) the right to bump another individual when there was a lack of work in a particular employee's job. In any event, even if Defendant's practice were different (and, to be sure, it was not), Defendant has explained to the court that it would have made no economic sense to have someone at Plaintiff's pay rate counting cars or performing any other job held by an employee with a lower rate of pay. Other employees with lower hourly rates were able to perform work at a substantially lower cost to Defendant. Plaintiff was the highest paid operator (and, to be sure this is ironic in light of his misguided pay claim); the employees performing the "counting" work were paid approximately half as much per hour as Plaintiff.

Plaintiff has not shown that another operator paid at his hourly rate was retained while he was not. Moreover, the undisputed Rule 56 evidence shows that white operators were also laid off at times during this time period, and that two other employees, Richard Gilliland, who is white, and Leobardo Torres, who is Hispanic, were also terminated in April due to lack of work. (Doc. # 18-1 at pp. 51-52, 62; Doc. # 18-6 at ¶ 9). Therefore, Plaintiff has failed to establish a prima facie case regarding his lay off or termination under this proof model.

Finally, it is undisputed that following Plaintiff's termination, two current employees, both who are African American, Frederick Hutchins and Duane Robinson, performed the work that Plaintiff had been doing. (Doc. # 18-4 at p. 139; Doc. # 18-1 at Ex. 2, p. 59-60). Therefore, Plaintiff failed to establish a prima facie case regarding his termination under the alternative model based on the race of his replacement. *Morris* 402 F.3d at 1082.

### 2. Defendant's Legitimate, Non-discriminatory Reasons

Even if Plaintiff had established a prima facie case (and, to be clear, he has not), Defendant has carried its exceedingly light burden of articulating legitimate, non-discriminatory reasons for Plaintiff's lay off and termination: Plaintiff was laid off during hunting season, and there was a lack of work. (Moreover, as Defendant has also explained, it is undisputed that Plaintiff's supervisor was not pleased with the fact that Plaintiff rigidly insisted on taking breaks and lunch regardless of whether trucks were waiting to be filled).

### 3. Plaintiff Has Not Shown that Defendants' Reasons are a Pretext for Discrimination

Because Defendant satisfied its burden of production of a legitimate, non-discriminatory reason for Plaintiff's lay off and termination, Plaintiff is required to come forward with evidence sufficient to permit a reasonable fact finder to conclude that the reasons Defendant gave were pretextual. *Burdine*, 450 U.S. at 253. He may do so by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." S*pringer v. Convergys Customer Mgmt. Group, Inc.*, 509 F.3d 1344, 1348-1350 (11th Cir. 2007). Importantly, conclusory allegations of discrimination, without more, are insufficient to show pretext. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996). Moreover, "[a] reason is not pretext for discrimination unless it is shown both that the

Case 7:12-cv-02072-RDP   Document 33   Filed 08/27/14   Page 13 of 18

reason was false, and that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County*, 446 F.3d 1160, 1163 (11th Cir. 2006).

Plaintiff has not disputed the stated reasons for his layoff and termination – that it was hunting season and there was a lack of work. He simply claims that, because of seniority, other employees should have been laid off or terminated instead of him and he should have been allowed to perform other work. However, Plaintiff cannot merely quarrel with the wisdom of the employer's reason, but must meet the reason head on and rebut it. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010); *Chapman v. Al Transport*, 229 F.3d 1012, 1034 (11th Cir. 2000). All of the competent Rule 56 evidence in the record establishes that seniority was not a basis for Defendant's employment decisions. Moreover, Plaintiff admittedly took breaks and lunch whether or not he made trucks wait. This court does not sit as the Human Resources Director for the Northern District of Alabama. That is, the court has been specifically instructed by the court of appeals not to be concerned with whether an employment decision is prudent or even fair, but only if it was motivated by unlawful animus. To be sure, an employer may fire an employee for a reason based on erroneous facts, an unfair reason, or for no reason at all, so long as the employment action is not taken for a discriminatory reason. *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999).

Plaintiff has not met his burden of showing either that the reasons given by Defendant for his layoff and termination was false or that race was the real reason for those decisions. Therefore, Defendant is entitled to summary Judgment on these claims.

### C.   Retaliation

Similar to its analysis of his termination claim, the court concludes that Plaintiff's retaliation claim fails at a number of levels.

13

### 1. Plaintiff Failed to Establish a Prima Facie Case

To establish a Title VII or § 1981 retaliation claim based on circumstantial evidence, Plaintiff must show that: (1) he engaged in statutorily protected expression; (2) he suffered a materially adverse employment action; and (3) there is a causal connection between the two events. *See Crawford*, 529 F.3d at 970; *see also Dixon v. The Hallmark Cos., Inc.,* 627 F.3d 849, 854 (11th Cir.2010); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (applying the same three-part test to retaliation claims under § 1981 and Title VII). Defendant does not dispute that Plaintiff engaged in statutorily protected expression when he filed a charge of Discrimination with the EEOC the day after his employment was terminated. At issue here is the second element (*i.e.*, whether Plaintiff was subjected to an actionable adverse employment action), and the final element (*i.e.*, whether Plaintiff demonstrated a causal relationship between the filing of his EEOC charge and the alleged retaliatory action).

The definition of adverse employment action in the context of a retaliation claim is much broader than that applicable to a discrimination claim. A materially adverse action "means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Crawford*, 529 F.3d at 974. To establish the second element referenced above, the employee must show that "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co*., 548 U.S. at 68. The challenged "adverse employment action" taken by Defendant is a letter from Defendant's attorneys to Plaintiff indicating that he is barred from entering Defendant's work sites (this after his employment had already been terminated). As the letter explains, this decision was made because it had been reported to Defendant that Plaintiff's brother had relayed a threat that, if Plaintiff saw him again, Plaintiff was going to

"whoop Guy Watkins's ass." (Doc. # 31-1 and 31-2). As an initial matter, the court has serious doubts that such a letter constitutes an actionable adverse employment action under the anti-retaliation provisions of Title VII and Section 1981. But, even more importantly, Plaintiff cannot show any causal relationship between the filing of his EEOC charge and the alleged retaliatory letter.

As the Supreme Court observed in *University of Texas Southwest Medical Center v. Nassar*, 133 S.Ct. 2517, 2533 (2013), "Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or action of the employer." *Id*. In other words, a plaintiff making a Title VII retaliation claim "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Id.* at 2534.

The Rule 56 record evidence establishes that two of Defendant's truck drivers reported to Defendant that Plaintiff's brother had relayed the threat. Although Plaintiff disputes that he ever made such a threat or told his brother than he was going to harm anyone, the fact that the threat was reported to Defendant by two employees is undisputed. Plaintiff presented an affidavit from a brother denying relaying a threat to anyone. But that declaration is from the wrong brother. The brother who reportedly relayed the threat is the one who lives in Greene County and works for the City of Eutaw. (In fact, that is how the brother who relayed the threat was identified). It is also undisputed that Defendant has a "Workplace Violence" Policy which provides for discipline up to and including discharge for violations, including threats of violence. Doc. # 18-4 at 153, Ex. 14).

The alleged threat by Plaintiff was reported to Defendant on or about June 8, 2011. (Docs. # 31-1 and 31-2). The challenged letter was sent by Defendant's attorneys to Plaintiff on June 10, 2011. (Doc. # 18-4). Plaintiff's charge of discrimination had been filed with the EEOC over two months earlier, on April 5, 2011. (Doc. # 18-4 at 138).

The law does not require a defendant to go to all possible lengths to rule out misconduct prior to taking an adverse employment action for such conduct; rather, a defendant must have undertaken only sufficient efforts to form an honest belief that the plaintiff engaged in the conduct. A decision based on a good faith belief of misconduct is legitimate, even if it is later determined that no misconduct occurred. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n. 3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for discriminatory conduct."). Here, Plaintiff had already been terminated when the threat was reported, a fact which makes the reported threat more credible. Summary judgment is appropriate if the employer has a good faith belief that the employee engaged in the conduct for which he was disciplined, regardless of whether the employee actually engaged in the misconduct. *See EEOC v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (citing *Damon*, 196 F.3d at 1361). Defendant has established that it received *reports* of a threat and that it believed, in good faith, that a threat to one of its employee had been made. Plaintiff has failed to present the requisite evidence of a causal relationship between his EEOC charge and the letter from Defendant's counsel regarding the reported threat.

### 2.    Plaintiff Has Not Established That Defendant's Reason Was Pretextual

Even if Plaintiff had presented sufficient evidence of causation to establish a prima facie case of retaliation (and, to be clear, he has not), he cannot establish that Defendant's stated

reason for having the letter sent was a pretext to hide a retaliatory motive. Although Plaintiff asserts that he never made any threats, that is simply insufficient to establish pretext. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 731 (3d Cir. 1995) ("Pretext is not demonstrated by showing simply that the employer was mistaken."); *EEOC v. Total System Services, Inc.*, 221 F.3d at 1176 (same, citing *Sempier*). The evidence before the court does not create an issue of fact as to whether a threat was reported to Defendant or whether Defendant believed that such a threat has been made. Therefore, Defendant is entitled to summary judgment on Plaintiff's retaliation claim.

## IV. Defendant's Motion to Strike

In Defendant's Motion to Strike Affidavits Filed In Support Of Plaintiff's Response to Defendants' Motion For Summary Judgment And Portions Of Plaintiff's Response (Doc. # 32), Defendant argues that certain exhibits to Plaintiff's Response to its Motion, and certain arguments made therein, are due to be stricken. The Motion (Doc. # 32) is due to be denied. The court is quite capable of sifting through the evidence in the record and the arguments in the briefs and determining what evidence is both relevant and admissible and which arguments are relevant to the claims made in Plaintiff's Complaint in this action. In any event, having considered the argument and evidence at issue, Defendant is still entitled to summary judgment on the claims asserted in Plaintiff's Complaint.

## V. Conclusion

For the foregoing reasons, Defendant is entitled to judgment as a matter of law on all of the claims asserted in Plaintiff's Complaint and Defendant's Motion for Summary Judgment is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this August 27, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE